UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYSHIELLE R. JACQUEZ,<br>Plaintiff,<br>v.<br>B. MAYBERRY, et al.,<br>Defendants. | No. 2:25-cv-3362 CSK P<br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se. Plaintiff's electronically filed original complaint was missing several pages. (ECF No. 1.) On January 23, 2026, this Court granted plaintiff's application to proceed in forma pauperis and ordered plaintiff to file a complete paper copy of the original complaint. (ECF No. 7.) On June 24, 2026, plaintiff filed a complete paper copy of the original complaint. (ECF No. 12.) This Court screens the complete paper copy of the original complaint below.

For the reasons discussed below, plaintiff is granted an opportunity to proceed with the following potentially colorable claim: retaliation against defendants Mayberry, Bangyan and George, raised in claim one.

## I. SCREENING STANDARDS

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

///

## II. THE CIVIL RIGHTS ACT

To state a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates was a cause of plaintiff's injury. Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011).

## III. PLAINTIFF'S COMPLAINT[1]

### A. Plaintiff's Factual Allegations

Named as defendants are Correctional Officer Mayberry, Correctional Officer Ceja, Correctional Lieutenant Vitale, Correctional Officer Bangyan and Correctional Officer George. (ECF No. 12 at 5-6.)

Plaintiff claims that on August 27, 2025, defendants Mayberry and Ceja entered the receiving and release section of Mule Creek State Prison ("MCSP") to retrieve plaintiff. (Id. at 13.) Plaintiff had been transferred from Salinas Valley State Prison ("SVSP") to MCSP. (Id.) Defendant Mayberry became upset when plaintiff could not hear what defendant Mayberry said to plaintiff while plaintiff was in the holding cell. (Id.) Defendant Mayberry opened the holding cell door and secured plaintiff in waist chain restraints. (Id.) As plaintiff began walking,

[1] As discussed in the complaint, plaintiff identifies as transgender. This Court refers to plaintiff as she/her.

defendant Mayberry "violently snatched [plaintiff] backwards, causing [plaintiff] to nearly fall…" (Id.) As plaintiff reengaged her walker, defendant Mayberry continued the same pattern of behavior until they reached the alpha facility yard. (Id.) Shortly after reaching the alpha facility yard, defendant Mayberry began threatening plaintiff. (Id.) Defendant Mayberry stated, "I am a bitch. Wanna be gangsta. Nigga. I'll fuck you up. You don't know about me. You're going to find out who I am. You're going away. I am going to have you packed out. Bitch I'll beat your ass myself bitch." (Id. at 13-14.) Plaintiff claims that defendant Mayberry began threatening plaintiff "only after" plaintiff said that she was going to file an administrative grievance against defendant Mayberry. (Id. at 14.) Plaintiff also claims that her threat to file an administrative grievance against defendant Mayberry "did not deter defendant Mayberry from his continued threat and epithets." (Id.) Plaintiff claims that after she threatened to file a grievance, defendant Mayberry "commenced to become more inflamed." (Id.) Defendant Mayberry made further threats of violence against plaintiff. (Id.) Based on these allegations, it is unclear whether plaintiff claims that defendant Mayberry began making threats before or after plaintiff threatened to file a grievance against him.

Plaintiff asked defendants Mayberry and Ceja if someone else could escort plaintiff. (Id.) This request was denied and inflamed defendants Mayberry and Ceja. (Id.) Defendant Ceja grabbed plaintiff's left arm and defendant Mayberry grabbed plaintiff's right arm. (Id. at 14.) Defendants began pulling plaintiff in two different directions, causing injuries to plaintiff's arms, shoulders and back. (Id.) Due to the high stress level caused by the incident and the pain caused by the violent snatching of her body while secured in waist chain restraints, plaintiff announced that she was "man down" and having chest pains. (Id.) Defendant Mayberry stated, "Fuck your man down. I'll write your ass up for manipulation." (Id. at 14-15.)

Plaintiff claims that after defendant Vitale arrived, defendant Mayberry stated to defendants Ceja and Vitale, "I wanna dip this bitch on the neck what we doing." (Id. at 14.) Defendant Mayberry also stated to plaintiff, "I'll find a way to put my hands on you." (Id.) Defendant Vitale refused to let another officer escort plaintiff in spite of plaintiff telling defendant Vitale what defendants Mayberry and Ceja were doing prior to defendant Vitale's

arrival. (Id. at 15.) Defendant Vitale was the superior officer of defendants Mayberry and Ceja and heard defendant Mayberry make verbal threats toward plaintiff. (Id.) Defendant Vitale stated, "I'm right here. Nothing is going to happen." (Id.) Shortly into the escort, defendant Mayberry yanked plaintiff's right arm. (Id.) After having to stop, defendant Vitale eventually took over the escort and there were no further issues. (Id.)

Shortly thereafter, plaintiff arrived at A2 building. (Id.) Once inside, defendant Vitale informed plaintiff that plaintiff would be assigned Cell No. 122 with inmate Nelson. (Id.) After defendant Vitale knocked on the door, inmate Nelson appeared at door window. (Id.) After defendant Vitale told inmate Nelson that plaintiff would be his assigned roommate, inmate Nelson stated, "He's not coming in here. Stop sending people." (Id.) Plaintiff then informed defendant Vitale of the rights of transgender people. (Id.) Plaintiff told defendant Vitale that inmate Nelson was a non-transgender inmate and housing plaintiff with inmate Nelson violated plaintiff's rights. (Id.) Defendant Vitale responded, "This is an all male prison. You have no rights." (Id.)

Plaintiff was then taken to the program office. (Id. at 16.) Upon plaintiff's arrival at the program office, plaintiff informed defendants Mayberry, Ceja and Vitale that she was going to file a grievance against them. (Id.) After plaintiff made this statement, defendant Mayberry instructed the officers, apparently defendants Bangyan and George, to not remove plaintiff's waist restraints and to not give plaintiff restroom breaks or water. (Id.) Plaintiff was placed in a holding cage for approximately three hours. (Id.) While plaintiff was in the holding cage, defendants Bangyan and George refused to remove the waist restraints, did not give plaintiff water and refused to allow plaintiff restroom breaks even after plaintiff told defendants that she suffered from incontinence. (Id.) This caused plaintiff to use the bathroom on herself. (Id.) Plaintiff claims that other inmates in holding cages were allowed to use the restroom and given water. (Id.) Plaintiff claims that she informed defendants Bangyan and George that she would be filing a grievance against them. (Id.)

Plaintiff claims that she was held in the holding cage for approximately three hours despite informing all defendants that she required medical care. (Id. at 16-17.) Plaintiff also

informed all defendants that plaintiff was making use of force allegations, yet all defendants denied this request which prevented plaintiff from accessing medical care until her release from the holding cage. (Id. at 17.) Plaintiff later had a CDCR 7219 completed which showed that plaintiff sustained injuries.[2] (Id.)

**B. Plaintiff's Legal Claims**

1. Claim One—Retaliation

Plaintiff claims that all defendants retaliated against her for exercising her right to file a report a complaint and file a grievance. (Id. at 17-18.)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. See Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The threat to file a grievance is protected by the First Amendment. See Gleason v. Placencia, 2020 WL 3497001, at *2-3 (E.D. Cal. June 29, 2020). In addition, the mere threat of harm can be an adverse action. See Brodheim v. Cry, 584 F.3d 1261, 1270-71 (9th Cir. 2009) ("Thus, the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.") (emphasis in original).

This Court finds that plaintiff states a potentially colorable retaliation claim against defendant Mayberry based on the threatening statements defendant Mayberry allegedly made to plaintiff after plaintiff said she was going to file a grievance against defendant Mayberry. Assuming that defendant Mayberry threatened plaintiff before plaintiff threatened to file a grievance against him, plaintiff's claim that defendant Mayberry continued his threats and that his threats became more inflamed after plaintiff threatened to file a grievance are sufficient to state a

[2] A CDCR 7219 is a Medical Report of Injury or Unusual Occurrence. See Hawkins v. Gomez, 2023 WL 5417604, at *2 n. 2 (E.D. Cal. Aug. 22, 2023).

retaliation claim.

Plaintiff also claims that after arriving at the program office, she threatened to file a grievance against defendants Mayberry, Ceja and Vitale. Plaintiff claims that in response to this threat, defendant Ceja instructed defendants Bangyan and George not to remove plaintiff's restraints or allow plaintiff water or restroom breaks while she was in the holding cell. Plaintiff claims that defendants Bangyan and George obeyed these instructions from defendant Mayberry, while allowing other inmates in holding cells restroom breaks and access to water. This Court finds that these allegations state potentially colorable retaliation claims against defendants Mayberry, Bangyan and George.

This Court finds that plaintiff has not adequately linked defendants Ceja and Vitale to her retaliation claims. While plaintiff appears to claim that defendants Ceja and Vitale heard plaintiff threaten to file grievances, plaintiff has not plead sufficient facts demonstrating that defendants Ceja and Vitale took adverse actions against plaintiff in response to these threats. Accordingly, the retaliation claims against defendants Ceja and Vitale are dismissed.

2. Claim Two—Excessive Force

When determining whether the force was excessive, the court looks to the "extent of the injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson v. McMillian, 503 U.S. 1, 7 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9 (citing Whitley, 475 U.S. at 327). A prison official may be held liable for the failure to intervene in another officer's use of excessive force only if they had a reasonable opportunity to intercede. See Cunningham v. Gates, 229 F.3d 1271, 1290 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

Plaintiff claims that defendants Mayberry and Ceja used excessive force in violation of the

Eighth Amendment. (ECF No. 12 at 19-20.) Plaintiff claims that defendant Vitale is liable as their supervisor because he could have stopped their actions. (Id. at 20.)

Plaintiff first claims that defendant Mayberry used excessive force when he "violently snatched" plaintiff, causing plaintiff to nearly fall. Standing alone, these allegations do not state a potentially colorable Eighth Amendment excessive force claim. Plaintiff does not describe how defendant Mayberry violently snatched plaintiff or address whether plaintiff suffered any injuries as a result of defendant's actions. Without more information regarding this alleged use of force, this Court cannot determine whether these allegations state a potentially colorable Eighth Amendment excessive force claim against defendant Mayberry. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (quoting Hudson, 503 U.S. at 9) ("[Not every malevolent touch by a prison guard gives rise to a cause of action," and "[a]n inmate who complains of a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim."). Accordingly, this claim is dismissed.

Plaintiff next claims that defendants Mayberry and Ceja used excessive force when they grabbed plaintiff's arms and pulled plaintiff in different directions, causing injuries to her arms, shoulders and back. Standing alone, these allegations do not state a potentially colorable Eighth Amendment excessive force claim. Plaintiff does not describe how defendants pulled her arms in different directions or the specific injuries caused to her arms, shoulders and back. Without more information regarding this alleged use of force, this Court cannot determine whether these allegations state a potentially colorable Eighth Amendment excessive force claim against defendants Mayberry and Ceja. See Wilkins, 559 U.S. at 38. Accordingly, this claim is dismissed.

Plaintiff next claims that defendant Mayberry used excessive force when he yanked plaintiff's right arm, apparently causing defendant Vitale to take over the escort. These allegations standing alone do not state a potentially colorable Eighth Amendment excessive force claim. Plaintiff does not describe how defendant Mayberry yanked her arm or address whether plaintiff suffered any injuries as a result of this incident. Without more information regarding this alleged use of force, this Court cannot determine whether these allegations state a potentially

colorable Eighth Amendment excessive force claim against defendant Mayberry. See Wilkins, 559 U.S. at 38. Accordingly, this claim is dismissed.

Plaintiff claims that defendant Vitale failed to stop the excessive force allegedly used by defendants Mayberry and Ceja. This Court finds that plaintiff fails to plead a potentially colorable Eighth Amendment failure to intervene claim against defendant Vitale because plaintiff fails to plead potentially colorable excessive force claims against defendants Mayberry and Ceja. In addition, plaintiff pleads no facts demonstrating that defendant Vitale witnessed defendant Mayberry allegedly violently snatching plaintiff during the escort to the alpha yard or defendants Mayberry and Ceja allegedly pulling plaintiff's arms in different directions. Therefore, defendant Vitale could not have intervened in these incidents. Plaintiff also does not plead sufficient facts demonstrating that defendant Vitale could have intervened when defendant Mayberry allegedly yanked plaintiff's right arm. For these reasons, plaintiff's Eighth Amendment failure to intervene claims against defendant Vitale are dismissed.

3. Claim Three—Inadequate Medical Care

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (internal citations omitted).

Plaintiff appears to claim that, when she went "man down," defendant Mayberry denied her medical care for the injuries she suffered to her arms, shoulders and back caused by defendants Ceja and Mayberry pulling her arms. Plaintiff also appears to claim that all defendants denied plaintiff medical care for the injuries to her arms, shoulders and back while she was in the holding cell. Plaintiff claims that these injuries were later documented in a CDCR 7219 form. However, plaintiff fails to describe these injuries or provide a copy of the CDCR

7219 documenting these injuries. Without knowing the type and extent of injuries plaintiff allegedly suffered and received treatment for, this Court cannot determine whether plaintiff states a potentially colorable Eighth Amendment claim for denial of adequate medical care against defendants. Accordingly, this claim is dismissed.

**IV. PLAINTIFF'S OPTIONS**

For the reasons discussed above, this Court finds that plaintiff's complaint states one potentially colorable claim: retaliation against defendants Mayberry, Bangyan and George, raised in claim one.

For the reasons discussed above, this Court finds that the following claims raised in the complaint are not potentially colorable: (1) retaliation against defendants Ceja and Vitale, raised in claim one; (2) excessive force against in violation of the Eighth Amendment against defendants Mayberry and Ceja raised in claim two; (3) failure to intervene in violation of the Eighth Amendment against defendant Vitale, raised in claim two; and (4) inadequate medical care in violation of the Eighth Amendment against all defendants, raised in claim three

Plaintiff may proceed forthwith to serve defendants Mayberry, Bangyan and George and pursue only her potentially colorable retaliation claim, or she may delay serving any defendant and attempt to cure the pleading defects as to the other claims found not potentially colorable. If plaintiff elects to proceed forthwith with her potentially colorable retaliation claim, then within thirty days plaintiff must so elect on the attached form. In this event the Court will construe plaintiff's election as consent to dismissal of the remaining claims without prejudice. Under this option, plaintiff does not need to file an amended complaint.

Or, plaintiff may delay serving any defendant and attempt again to cure the pleading defects as to her claims found not potentially colorable. If plaintiff elects to attempt to amend her complaint to cure these pleading defects, plaintiff has thirty days to amend. Plaintiff is not granted leave to add new claims or new defendants.

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, plaintiff has complied with the California Government Claims Act, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief.

Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act, or omits to perform an act he is legally required to do that causes the alleged deprivation).

A district court must construe a pro se pleading "liberally" to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft, 556 U.S. at 678 (citations and quotation marks omitted). Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations, and are not entitled to the assumption of truth. Id.

An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 220; see Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files an amended complaint, the original pleading is superseded. Plaintiff is not granted leave to add new claims or new defendants.

///

///

**V. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. The following claims are dismissed with leave to amend: (1) retaliation against defendants Ceja and Vitale, raised in claim one; (2) excessive force against in violation of the Eighth Amendment against defendants Mayberry and Ceja raised in claim two; (3) failure to intervene in violation of the Eighth Amendment against defendant Vitale, raised in claim two; and (4) inadequate medical care in violation of the Eighth Amendment against all defendants, raised in claim three. Within thirty days of service of this order, plaintiff may file an amended complaint. Plaintiff is not obligated to amend her complaint.

2. The allegations in the complaint are sufficient to state a potentially colorable retaliation claim against defendants Mayberry, Bangyan and George, raised in claim one. <u>See</u> 28 U.S.C. § 1915A. If plaintiff chooses to proceed solely as to such claim, plaintiff shall so indicate on the attached form and return it to the Court within thirty days from the date of this order. In this event, the Court will construe plaintiff's election to proceed forthwith as consent to an order dismissing the defective claims without prejudice.

3. Failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: August 13, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Jacq3362.14(2)/2

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MYSHIELLE R. JACQUEZ,

Plaintiff,

v.

B. MAYBERRY, et al.,

Defendants.

No. 2:25-cv-3362 CSK P

NOTICE OF ELECTION

Plaintiff elects to proceed as follows:

______ Plaintiff opts to proceed with the following claim: retaliation against defendants Mayberry, Bangyan and George, raised in claim one. Under this option, plaintiff consents to dismissal of the remaining claims raised in the complaint, without prejudice.

**OR**

_____ Plaintiff opts to file an amended complaint and delay service of process.

DATED:

____________________________________

Plaintiff